MARY C. BANNING, Administratrix, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

1. **Railroads:** INJURY AT CROSSING: DUTY TO LISTEN FOR TRAINS. When one is about to cross a railroad track, and knows that there are obstacles which may prevent his seeing an approaching train, and there is nothing to prevent his stopping and listening, and his attention is in no way diverted by surrounding circumstances from listening, and it appears that, if he had listened, the injury which he received by a collision with a moving car would have been avoided, the failure to listen constitutes such negligence as will defeat a recovery for the injury.

2. ———: ———: VIEW OF PREMISES BY JURY: DISCRETION OF COURT. In an action for the death of the plaintiff's intestate upon a railroad crossing, the court permitted the jury to view the scene of the accident; to which the defendant objected, on the ground that the premises might have been changed in the meantime. *Held*, that in the absence of evidence to the contrary, it must be presumed that the

situation remained unchanged, and that permitting a view in such cases is a matter so much within the discretion of the trial court that this court can not interfere, where no abuse of that discretion is shown.

3. ———: ———: WARNING OF DANGER: SPECIAL INTERROGATORY.  In such case, where the evidence showed that, as the plaintiff's intestate was approaching the crossing, some one remarked, "You had better hold up; the train is coming," it was error for the court to submit to the jury the question, whether the deceased had reason to believe that the remark was addressed to parties other than himself, as the only material question was whether he heard it.

4. ———: ———: CONTRIBUTORY NEGLIGENCE.  An instruction that the plaintiff could not recover if the deceased, by his negligence, "substantially" or "materially" contributed to the injury, held, to be erroneous, the true rule being that, if the injured party contributes in any way, or in any degree, directly to the injury, there can be no recovery.

5. ———: ———: ELEMENTS OF NEGLIGENCE: CONTRADICTORY INSTRUCTIONS.  After the court had, in one instruction, taken from the jury certain elements of negligence as charged in the petition, it was error, in other instructions, to tell the jury that the plaintiff could recover if she showed that the death of her intestate was the result of one or more of the acts of negligence charged in the petition.

6. ———: ———: INSTRUCTION WITHOUT EVIDENCE: COMPARATIVE NEGLIGENCE.  An instruction intended to cover a case where the defendant is negligent after being aware of the negligence of the injured party, held, erroneous, because there was no evidence on which to base it, and because it was so worded as to lead the jury into an inquiry as to the comparative negligence of the defendant and the deceased; the doctrine of comparative negligence not being recognized in this state.

*Appeal from Audubon District Court.*—WALTER I. SMITH, Judge.

FRIDAY, OCTOBER 6, 1893.

ACTION against the defendant for damages for a personal injury to J. E. Banning, which resulted in his death. From a verdict and judgment for plaintiff the defendant appeals.—*Reversed.*

*Nash, Phelps & Green* and *Wright & Baldwin*, for appellant.

*Theo. F. Myers* and *F. E. Brainard,* for appellee.

KINNE, J.—The plaintiff's intestate, J. E. Banning, a man fifty-three years old, was on December 4, 1890, injured by a car of the defendant, which was being kicked along and upon its side track at Audubon, Iowa. He died on the eighth of said month. The defendant's depot in said town is situated at the end of Broadway street. At the east side of the defendant's right of way, and running past the end of said street, there is a side track of the defendant. There is a sidewalk on the south side of said street leading to the defendant's depot, which crosses the side track before mentioned, and it was at this crossing that the accident occurred. It appears also that this is the only walk from the town which extends to the depot. There are a warehouse and some coal sheds south of said walk, and adjacent to said side track, which obstruct the view of one approaching the depot on said sidewalk as to trains of the defendant south of said crossing and depot, which can only be seen after passing said buildings. It appears that the train was to leave at ten o'clock A. M. The plaintiff's intestate was going to the depot for the purpose of taking passage thereon. At about a half hour prior to the time for departure of the train on December 4, 1890, the plaintiff's intestate went west on the sidewalk toward the depot. He was running, or, as some of the witnesses say, was on a "dog trot." As he approached said track, a freight car of the defendant, which had been detached from the train, was being kicked along, and upon said side track, and was crossing at the foot of Broadway and of the sidewalk, when the plaintiff's intestate arrived at the same point. He ran against the car, and was knocked down, and dragged for some distance.

The particular acts of negligence charged against the defendant are: *First,* the constructing of its side

track so near the warehouse and sheds; *second*, that the switch track was sunk where it crossed the street, so as to leave a ridge of dirt about a foot high on the east side of it; *third*, failure to keep a flagman or watchman at the place where the side track crossed the sidewalk; *fourth*, that no brakeman was on the detached car; *fifth*, that the train which was propelling the car was running at a negligent rate of speed.

It appeared that the deceased was a farmer and carpenter; that he was not familiar with the depot grounds of the defendant, though he had come to Audubon on the train, and hence must have had some knowledge as to the defendant's tracks and grounds; that the sidewalk, on which he was going to the depot when injured, was built and maintained by the defendant, and had been used by the public for more than ten years as a public crossing; that he died as a result of the injury. Damages were claimed in the sum of ten thousand dollars.

The defendant denied generally, and alleged that the injury complained of was caused and contributed to by the deceased. At the conclusion of the testimony the defendant moved the court to direct a verdict for it, which motion was overruled. Over the defendant's objection, the jury was permitted to view the locality of the accident. Certain special interrogatories, asked by both parties, were submitted to the jury.

I. Error is assigned on the refusal of the court to direct a verdict for the defendant. The motion to direct a verdict was based upon the negligence of the deceased, which contributed to the accident, and a failure to establish negligence on the part of the defendant.

1. RAILROADS: injury at crossing: duty to listen for trains.

It appears that, when Banning was running towards the depot, he was warned that a train was approaching, but he did not heed the warning. The evidence, without conflict, shows that the whistle was sounded several

times, and the bell rung.   He paid no attention to these signals of danger, if he heard them, but kept on until he collided with the moving car.   He knew he was approaching a railroad track, always a place of danger, and it was his duty, even in the absence of any special warning, or of the giving of signals of those in charge of the train, to use his sense of hearing as well as of sight.   Whether or not he heard the train will never be known.   It does not appear that his sense of hearing or seeing was in any way impaired, and, if he had stopped and listened, he would have certainly heard the train, and avoided the accident.   The slightest observation would have shown him that his duty to listen was all the more necessary by reason of the obstructions which would prevent him from seeing the train until it had arrived at the street line; yet he took no care to protect himself from danger by stopping and listening, but rushed heedlessly on to his death.   Some six men, besides the railroad employees, testified to the blowing of the whistle and ringing of the bell.   They all knew a train was near, and some of them were waiting for it to pass when the deceased was approaching the track.

But the signals given by the train were not the only warnings that deceased had.   Before he reached the train he was told to hold up; that a train was coming. He looked towards the speaker, made no reply, and continued running towards the track.   As others, no more favorably situated than he, heard the signals of the approaching train, it must be presumed that, if he had listened, he also would have heard them.   There is no evidence that deceased took any steps, whatever, to ascertain if the train was coming.   Even though he was approaching a railroad depot for the purpose of taking passage upon a train, still he was bound to know that it was a place of known danger, and to make reasonable use of his senses of sight and hearing for the

preservation of his person from harm. The jury, in a special finding, say they do not know whether deceased listened or not. It is true that a failure to look and listen will not always defeat a recovery. But where, as in this case, one is about to cross a railroad track, and knows that there are obstacles which may prevent his seeing an approaching train, and there is nothing to prevent his stopping and listening, and his attention is in no way diverted by surrounding circumstances from listening, and it appears that, if he had listened, the injury would have been avoided, the general rule must be held to apply that a failure to listen constitutes such negligence as will defeat a recovery. As supporting this rule, we refer to the following cases: *Lang v. Mining Co.*, 49 Iowa, 469; *Artz v. Chic., R. I. & P. R'y Co.*, 34 Iowa, 153; *Dodge v. Chic., R. I. & P. R'y Co.*, 34 Iowa, 276; *Carlin v. Chic., R. I. & P. R'y Co.*, 37 Iowa, 316; *Payne v. Chic., R. I. & P. R'y Co.*, 39 Iowa, 523; *Haines v. Ill. Cent. R'y Co.*, 41 Iowa, 227; *Benton v. Cent. Iowa. R'y Co.*, 42 Iowa, 192; *Funston v. Cent. Iowa R'y Co.*, 61 Iowa, 452; *Schaefert v. Chic., M. & St. P. R'y Co.*, 62 Iowa, 624; *Griffin v. Chic., R. I. & P. R'y Co.*, 68 Iowa, 638; *Sala v. Chic., R. I. & P. R'y Co.*, 85 Iowa, 678. There is no evidence that the defendant knew, or by the exercise of reasonable care could have known, that the deceased was about to attempt to go upon the track, regardless of the moving car. The motion should have been sustained. The plaintiff had failed to establish an element in her case essential to her recovery, the freedom of the deceased from negligence which contributed to produce the injury. As we have endeavored to show, if the deceased had not been guilty of negligence, this accident would never have happened.

II. It is said that the court erred in permitting the jury to view the scene of the accident. It is insisted

2. ——: ——: view
of premises by
jury: discre-
tion of court.
that the premises may have been different when viewed by the jury from what they were when the accident occurred. The evidence does not sustain the contention. For aught that appears, the premises were in all respects as when the injury resulted. Certainly in the absence of evidence to the contrary, we may well presume that there had been no change. This matter of permitting a view is so much in the discretion of the trial court that we should not be justified in interfering with its action in that respect unless an abuse of that discretion is shown. No such case is made in this record.

III. The fourteenth interrogatory should not have been submitted to the jury. It read: "Did the
3. ——: ——: war-
ning of dan-
ger: special
interrogatory.
decedent, J. E. Banning, have reason to believe that the remark of O. Kennels, if any was made, was addressed to parties other than himself?" The jury answered this, "Yes." The remark referred to was: "You had better hold up, the train is coming." Now, it was entirely immaterial to whom the remark was addressed. The real question is, did the deceased hear the remark. If so, it being a warning of impending danger, he was in duty bound to heed the admonition, as much as if it had been directed to him. The only evidence which can be said to tend to show that the remark was not addressed to the deceased is that of a witness who says, that the thought the remark was addressed to him (the witness), not to the deceased. But, as we have said, it is not material to whom it was made, if the deceased heard it.

IV. The jury were told in the third instruction that defendant would not be liable if the injured party
4. —— : ——: con-
tributory neg-
ligence.
"substantially" contributed to the injury. In the fifth instruction they were told it was incumbent on plaintiff to show that deceased was not guilty of negligence which "mate-

rially" contributed to the accident. The same thought is also found in the eleventh instruction. These instructions are all erroneous. The rule is that, if the injured party contributed in any way, or in any degree directly to the injury, there can be no recovery. *McAunich v. Miss. & Mo. R'y Co.*, 20 Iowa, 338; *Haley v. Chic. & N. W. R'y Co.*, 21 Iowa, 15. Now, the rule given the jury was that the plaintiff's intestate's negligence, in order to defeat recovery, must have materially or substantially contributed to produce the injury; that is, the negligence of the deceased must have contributed "in an important degree" to the injury in order to prevent a recovery. Such is not the law in this state. *Artz v. Chic., R. I. & P. R'y Co.*, 38 Iowa, 296.

V. In the fourth instruction the court takes from the jury, as elements of negligence, the charge of the construction and maintenance of the side track near the warehouse, also the charge as to the bank of earth east of the track; yet afterwards the jury are told that the plaintiff could recover if she showed, by a preponderance of the evidence, that the death of her intestate was the direct or proximate result of one or more acts of negligence charged in the petition. The jury should have been confined to the charges of negligence remaining, after eliminating those mentioned in the fourth instruction.

5. ——: ——: elements of negligence: contradictory instructions.

VI. We do not think the testimony justified the giving of the eighth instruction. It seems to have been intended to cover a case where there was evidence to show that the defendant was negligent after being aware of the negligence of the injured party. There was no evidence tending to establish such a state of acts. The instruction was erroneous in another respect, in that it was so worded as to cause the jury

6. ——: ——: instruction without evidence: comparative negligence.

to institute an inquiry as to the comparative negligence of the deceased and the defendant. The doctrine of comparative negligence is not followed in this state; and if the deceased contributed directly, in any degree, or to any extent, in producing the injury, the plaintiff can not recover.

The judgment below must be REVERSED.