C. E. SWAN, Appellant, v. DAILEY-LUCE AUTO COMPANY et al., Appellees.

No. 43173.

FEBRUARY 19, 1936.

REHEARING DENIED OCTOBER 2, 1936.

Garrett & Elson and H. B. Bracewell, for appellant.

Murrow & Miles and W. H. Tedrow, for appellees.

Kintzinger, J.—Plaintiff, while crossing a street intersection as a pedestrian in the town of Lineville, Iowa, at about ten o'clock p. m. on March 29, 1933, was struck by an automobile owned by the Dailey-Luce Auto Company and driven by the defendant Howard Dailey in a southerly direction. The allegations of negligence submitted to the jury were substantially as follows:

First, that defendant failed to have said car under control and failed to reduce the speed thereof so that the same could be stopped within the assured clear distance ahead.

Second, that defendant failed to keep a proper lookout for pedestrians who might be traveling on said highway.

The testimony in substance shows that the defendants' driver was proceeding south on highway No. 65, which runs north and south through the town of Lineville; that there is a fork in this highway from the crossing in question forming two streets running east and west from the point where plaintiff was struck. The testimony shows that the driver of the automobile and the plaintiff, the pedestrian, could see each other for a distance of at least 180 feet. The testimony shows that, before plaintiff started to cross the street, he looked in both directions but says he saw nothing. The driver of the car testified that, when he looked south toward the crossing, he saw plaintiff on the east side of the street, and did not see him again until just before he struck him on the crossing. The evidence shows that plaintiff was almost under the floodlights at a filling station located just south of the crossing and in the space between the forks of the roads, where the two branches of No. 65 separate. The defendants' car was properly equipped with headlights and could be seen for a distance of at least 180 feet. There was therefore evidence from which the jury could find that both parties could have seen each other.

The record shows that, when plaintiff reached that part of the center of the crossing just north of the filling station, he

suddenly started westerly on a "dog trot" across the street, and that, when crossing, he held his head down and never looked up. He was struck at a point about one step from the west side of the street.

There is testimony to show that, before he started to cross the street, he looked north toward the defendants' car, which was approaching at a speed of about 20 or 25 miles an hour. The speed of defendants' car did not slacken until just about the time it struck plaintiff.

This case was submitted to the jury, which returned a verdict in favor of defendants, and plaintiff appeals.

Mr. Dailey, the driver of defendants' car, testified that, when he was about at the first alley north of the crossing in question, which is 180 feet from the crossing, he saw the plaintiff standing on the crossing immediately north of the filling station on the east side of Main street. The distance across the street from the point where defendants' driver saw plaintiff standing in front of the filling station was 50 feet. The driver also testified that, as he was driving south at that time, he had a plain view of the crossing on which the accident happened. There is a slight bend or angle in highway No. 65 where it starts to fork into Main street. This bend in the highway is 90 feet north of the crossing on which plaintiff was crossing the street. The evidence shows without dispute that from this point in the highway the entire crossing over which plaintiff was walking was within plain view of defendants' driver. The evidence shows that, when the plaintiff reached a point on this crossing 50 feet from the west side of it, he looked both north and south. Plaintiff was a man 77 years of age, and, after so looking, he proceeded to cross to the west side of the street. The evidence shows that he was visible to the defendants' driver when defendants' car was 180 feet from the crossing. There is some testimony tending to show that the entire westerly side of the crossing might not have been visible to defendants' driver at that distance on account of an angle beginning the fork of the road on south into Main street. But the evidence is undisputed that the entire crossing was visible to defendants' driver from the angle in the road to the crossing for a distance of at least 90 feet. The undisputed evidence also shows that the entire crossing could be seen for a distance of 180 feet by the driver of an automobile traveling south on the westerly side of the

center line of Highway No. 65. When defendants' driver was 180 feet north of the crossing, he saw plaintiff standing in front of the filling station at a point about 50 feet from the west side of the street. The evidence tends to show that about the time defendants' driver saw him on the crossing 180 feet away the plaintiff started on a "dog trot" westerly across the street, and that, when he reached a point about one step from the west side of the street, he was struck by defendants' car.

Defendants' driver testifies that, after seeing the plaintiff standing in front of the filling station, he never saw him again until he "popped up" in front of his car just before the accident happened. The entire crossing was made plainly visible by electric lights at the filling station, and the driver admitted that he saw plaintiff when his car was 180 feet from the point where plaintiff was standing in front of the filling station. There is nothing in the record in this case tending to show there was anything in the roadway to obstruct defendants' view of plaintiff while the latter was traversing the crossing in question.

 I. Plaintiff contends the court erred in giving instructions Nos. 7 and 8 relating to contributory negligence.

Instruction No. 7 says:

"You are instructed that contributory negligence, as used in these instructions, means in law such negligence on the part of the plaintiff as helped to produce the injury complained of;

"And, if the jury find that the plaintiff was guilty of any act of negligence on his part that helped to bring about or produce the injury complained of, then and in that event the plaintiff would not be entitled to recover in this action.

"And, in this connection, you are further instructed that the plaintiff must establish by a preponderance of the evidence his freedom from contributory negligence before he would be entitled to recover from the defendants. To establish his right to recover it would not be sufficient to show that the defendant, Howard Dailey, was guilty of negligence and that such negligence was the proximate cause of the injuries of which plaintiff complains, but plaintiff must establish by a preponderance of the evidence his own freedom from contributory negligence before he would be entitled to recover for any damage occasioned to him by reason of any negligence on the part of the defendant, Howard Dailey."

Instruction No. 8 says:

"You are instructed that he (plaintiff) was for his own safety bound to use that degree of care and caution that an ordinarily careful and prudent person would have used under the same or similar circumstances. If he did use such care then he was not guilty of contributory negligence. If he did not use that degree of care and caution for his own safety that an ordinarily careful, cautious and prudent person would have used under the same or similar circumstances, then he was guilty of contributory negligence."

It is claimed that the instructions are erroneous because the court nowhere else gives a correct instruction on the subject of contributory negligence, and that these instructions allowed the jury to speculate and consider acts of the plaintiff that were remote and not a proximate cause of the injury, and that, before a recovery by the plaintiff could be defeated, it must be shown that the damages resulting from the injury "must have been a proximate cause of such injury."

In instruction No. 5 the court defines negligence as follows:

"Negligence is defined in a general sense as an omission to perform some duty imposed by law for the protection of the person or property of another. * * * Negligence may * * * be defined as the doing of a thing which an ordinarily cautious and prudent man would not have done under the same or similar circumstances, or the not doing of a thing which an ordinarily prudent and cautious man would have done under the same or similar circumstances."

As hereinabove set out, instruction No. 7 tells the jury that contributory negligence means in law such negligence on the part of the plaintiff as helped to produce the injury complained of.

We think that, when these instructions are construed together, they fairly and correctly instruct the jury upon the question of contributory negligence.

It is the well-settled rule of law in this state that the instructions must be considered as a whole, and if, when so considered, they fairly instruct the jury upon the questions presented, there is no prejudicial error. The instructions as a whole tell the jury in effect that, if the negligence of the plaintiff was

a contributing cause to the injury, it will defeat a recovery, although it may not be the proximate cause thereof.

■■ It is the settled rule of law in this state that "contributory negligence, in order to bar a recovery by the one guilty thereof, need not be the proximate cause." Hogan v. Nesbit, 216 Iowa 75, 246 N. W. 270, 272; Towberman v. Des Moines City Ry. Co., 202 Iowa 1299, 211 N. W. 854; Stilson v. Ellis, 208 Iowa 1157, 225 N. W. 346; O'Hara v. Chaplin, 211 Iowa 404, 233 N. W. 516; Albert v. Maher Bros. Transfer Co., 215 Iowa 197, 243 N. W. 561; Hoegh v. See, 215 Iowa 733, 246 N. W. 787.

In Towberman v. Des Moines Ry. Co., 202 Iowa 1299, loc. cit. 1300, 211 N. W. 854, this court said:

"We have many times stated the rule as to contributory negligence. It is well stated in Banning v. C., R. I. & P. R. Co., 89 Iowa 74, at page 81, 56 N. W. 277, 279 where we said: 'If the injured party contributed in any way, or in any degree directly to the injury, there can be no recovery.' This is a simple and exact statement of the rule that has been followed in this state. * * * We have nowhere held that an instruction which told the jury that the negligence on the part of plaintiff necessary to bar recovery must be the proximate cause of the injury was correct * * *. It would be impossible to so hold under the rule of contributory negligence that we have laid down heretofore and consistently followed, as set out in the excerpts from the Banning case above cited. The thought involved in the use of the term 'proximately caused' is that there must be a causal relation between the plaintiff's negligence and the injury, *and not that it must be the proximate cause thereof.*" (Italics ours.)

While these instructions may not be considered model definitions of contributory negligence, we are constrained to hold that, when considered together and in connection with instruction No. 5, they sufficiently advised the jury as to the meaning of contributory negligence, and are therefore not sufficiently prejudicial to constitute error.

■■ II. The chief error relied on for reversal is the giving of instruction No. 11. In this instruction the court told the jury:

"That the term 'having the automobile under control' is one that has no fixed or certain definition under any and all cir-

cumstances. Much depends upon the situation presented in each individual case as shown by the evidence.

"Generally speaking it may be said that a driver has a car 'under control' if it is moving at the time at such rate of speed and the driver has the mechanism and power of the car under such control that it can be brought to a stop within a reasonable degree of celerity. A driver of such vehicle is not bound by any hard and fixed rule of conduct and is not required to be able to avoid collision with a pedestrian or other vehicles on the highway under any and all circumstances.

"The test is, did he at the time and place and under all the conditions shown as to the nature of the highway, his speed, the traffic, conditions of atmosphere, daylight or darkness and all other conditions shown, have the car under such control that if occasion demanded he could stop the same with a reasonable degree of celerity, *but in all cases and under all these circumstances he is only bound to use that degree of care, caution and prudence that an ordinarily careful, cautious and prudent man would have used at the time under the same or similar circumstances* in the control and operation of said car. [Italics ours.] If he did not so act and have his car under such control he was guilty of negligence. If he did use such care and caution and have his car under such control he was not guilty of negligence on the ground claimed of failure to have his car under control."

Plaintiff contends that this instruction is clearly erroneous and does not properly advise the jury of the duty imposed upon the driver under the assured clear distance statute, Section 5029 of the Code of 1931, which provides that:

"Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed *not greater than nor less than is reasonable and proper,* having due regard to the traffic, surface and width of the highway and of any other conditions then existing, *and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead.*" (Italics ours.)

It will be noticed that this statute imposes two duties upon the driver of an automobile. The first is that the driver "shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the

traffic, surface," street and other conditions. The second duty imposed is that "no person shall drive any vehicle upon a highway *at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead."*

Appellant contends that the duty imposed by this statute was not properly explained to the jury. This statute, in addition to requiring a driver to "drive * * * at a careful and prudent speed," etc., also provides that he shall not "drive * * * at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead."

The court, in submitting the issues in instruction No. 1, said:

"The specific acts of negligence which plaintiff charges against the defendants are as follows: "First, that he failed to have said car under control, and failed to reduce the speed of said automobile so that the same could be stopped within the assured clear distance ahead" and "Second, that he failed to keep a proper lookout for pedestrians who might be traveling on the said highway."

In instruction No. 10 the court told the jury that, if they "find the defendant * * * drove his car as he approached the crossing where the collision * * * occurred, at such a rate of speed that the same could not be stopped within the assured clear distance ahead, or failed to reduce the speed * * * as he approached said crossing so that the same could be stopped within the assured clear distance ahead, *his failure to have said car under control,* within the meaning of the law, *and his failure to reduce the speed thereof,* would constitute negligence on his part. * * * *As to what constitutes having a car under control, within the meaning of the law, you are instructed further as set out in the next instruction,"* and then follows instruction No. 11, which tells the jury "that a driver has a car *'under control'* if it is moving at the time at such rate of speed and the driver has the mechanism and power of the car under such control that it can be brought to a stop *within a reasonable degree of celerity,* and that a driver of such vehicle *is not bound by any hard and fast rule of conduct and is not required to be able to avoid a collision with a pedestrian * * * under any and all circumstances.* [Italics ours.] The test is, did he at the time and place and under all the conditions shown as to the nature of the highway,

his speed, the traffic, conditions of atmosphere, daylight or darkness and all other conditions shown, have the car under such control that if occasion demanded *he could stop the same with a reasonable degree of celerity, but in all cases and under all these circumstances he is only bound to use that degree of care, caution and prudence that an ordinarily careful, cautious and prudent man would have used at the time under the same or similar circumstances* in the control and operation of said car. [Italics ours.] If he did not so act and have his car under such control he was guilty of negligence. If he did use such care and caution and have his car under such control he was not guilty of negligence on the ground claimed of failure to have his car under control.''

■■■ These instructions are clearly misleading as to the requirements of the ''assured clear distance ahead'' statute hereinabove quoted. The test of liability as given in these instructions is that the negligence of the driver is to be determined by the old rule of negligence applicable before the adoption of the ''assured clear distance ahead'' statute in 1929. The present statute requiring all drivers *to drive at such a speed as to be able to stop their car within the assured clear distance ahead* is not governed by the rules applicable prior to 1929. They now impose upon the drivers of cars the positive duty of not driving their car at a speed greater than will permit them to bring it to a stop within the assured clear distance ahead. If, therefore, the defendants' driver saw, or in the exercise of ordinary care could have seen, the plaintiff crossing the street ahead of his car, it was his duty to reduce the speed thereof to such a rate as would enable him to bring it to a stop within the assured clear distance ahead, and the reasonable care rule heretofore in existence has no application. The driver of a car is now required to absolutely stop his car within the assured clear distance ahead *unless he is able to show ''a legal excuse''* for not so doing. This is the rule laid down by this court in the following cases: Lindquist v. Thierman, 216 Iowa 170, 248 N. W. 504, 87 A. L. R. 893; Greenland v. City of Des Moines, 206 Iowa 1298, 221 N. W. 953; Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552; Wosoba v. Kenyon, 215 Iowa 226, 243 N. W. 569; Peckinpaugh v. Engelke, 215 Iowa 1248, 247 N. W. 822; Kimmel v. Mitchell, 216 Iowa 366, 249 N. W. 151; Kadlec v. Al. Johnson Const. Co., 217 Iowa 299, 252 N. W. 103; Hart v. Stence, 219 Iowa 55, 257 N. W. 434,

97 A. L. R. 535; Townsend v. Armstrong, 220 Iowa 396, 260 N. W. 17; Schwind v. Gibson, 220 Iowa 377, 260 N. W. 853.

In the Kisling v. Thierman case, 214 Iowa 911, loc. cit. 915, 243 N. W. 552, this court, speaking through Justice Albert, said:

"In other words, accurately speaking, where the statute or ordinance has fixed the standard of care, the failure to observe such standard is negligence, and when in the trial of a case,— the other elements being proven,—it is shown that the defendant failed to observe the standard of care thus fixed, a case is made for the jury in the first instance. In such case, the defendant may offer proof excusing his failure to observe such legal standard of care. If, however, he fails to furnish proof of such legal excuse, then it is accurate to say that negligence is established as a matter of law.

"With this thought in mind and in accord with this idea, a court is warranted in saying to the jury that if the defendant failed to observe the standard of care thus fixed by statute, he is guilty of negligence, unless he has shown a legal excuse for failure to observe the requirements of the statute or ordinance, and in case he has so shown such legal excuse, he is not guilty of negligence. By the term 'legal excuse' is meant:

"1. Anything that would make it impossible to comply with the statute or ordinance.

"2. Anything over which the driver has no control which places his car in a position contrary to the provisions of the statute or ordinance.

"3. Where the driver of the car is confronted by an emergency not of his own making, and by reason thereof he fails to obey the statute.

"4. Where a statute specifically provides an excuse or exception. * * *

"The rules here announced are to govern in all such cases, regardless of anything said in prior opinions."

In Townsend v. Armstrong, 220 Iowa 396, loc. cit. 404, 260 N. W. 17, 21, this court, speaking through Justice Albert, also said:

"The thought that underlies that case [Kisling case] is that, where one violates a statute or ordinance, by so doing he is guilty of negligence, but, if there is a legal excuse for his so doing, he would not be guilty of actionable negligence."

852

Instruction No. 11, in effect, advised the jury that in all cases and under all circumstances the defendant is only bound to use that degree of care, caution, and prudence that an ordinarily careful, cautious, and prudent man would have used at the time under the same or similar circumstances in the control and operation of said car, and that, if he did use such care and caution and have his car under control, he was not guilty of negligence.

Under the assured clear distance statute involved in this action, it was the court's duty, under the circumstances disclosed by the evidence in this case, to have instructed the jury that, if the defendant failed to drive his car at such a speed as to enable him to bring it to a stop within the assured clear distance ahead, then the defendant was guilty of negligence as a matter of law, *unless* he showed a legal excuse for not complying therewith, in accordance with the meaning of "legal excuse" as hereinabove referred to.

We think the instructions given to the jury on the assured clear distance statute were misleading and prejudicial. The giving of instruction No. 11 was therefore erroneous.

Several other errors are assigned as a reason for a reversal of this case. In view of the fact that a reversal is necessary and that any such errors relied on may not arise at a future trial of this case, we deem it unnecessary to consider them here.

For the reasons hereinabove set out, the judgment of the lower court is hereby reversed.—Reversed.

DONEGAN, C. J., and ALBERT, PARSONS, RICHARDS, and HAMILTON, JJ., concur.