MURRAY et al. v. SOUTHERN PAC. CO.

(Circuit Court of Appeals, Ninth Circuit.   October 23, 1916.)

No. 2726.

1. NEGLIGENCE ⬧�singapore65—"CONTRIBUTORY NEGLIGENCE"—NATURE OF DEFENSE.

"Contributory negligence" is a want of ordinary care upon the part of a person injured by the actionable negligence of another combining and concurring with that negligence to prŏduce the injury, and therefore the defense of contributory negligence concedes that there was actionable negligence on the part of defendant.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 83, 94; Dec. Dig. ⬧�singapore65.

For other definitions, see Words and Phrases, First and Second Series, Contributory Negligence.]

2. CARRIERS ⬧�singapore333(5)—CARRIAGE OF PASSENGERS—NEGLIGENCE OF PASSENGERS —CONTRIBUTORY NEGLIGENCE.

Deceased, a passenger on a train, was notified by the brakeman who had promised to let him off on the side of the train opposite from the station that his stop had been reached.  The brakeman opened the door and trap, the train being a vestibuled one, and, without waiting for a stop, deceased prepared to alight, starting down the steps holding to the rail on the opposite side from the direction in which the train was going, and carrying his grip in his other hand.  He either stepped off ǫr was, in trying to recover himself at the last moment, thrown from the train, his hold on the rail turning him with his back towards the engine, so that his body swung outward and his grasp on the rail was broken.  *Held*, that- deceased was guilty of contributory negligence as a matter of law in attempting to alight while the train was in motion; for an adult passenger, who knowingly and unnecessarily attempts to alight from a train while it is in motion, ordinarily is chargeable with contributory negligence as a matter of law, and deceased's manner in going on the steps was negligent.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1391; Dec. Dig. ⬧�singapore333(5).]

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Benj. F. Bledsoe, Judge.

Action by Mary Murray and Lena Murray, a minor by her guardian ad litem, Mary Murray, against thé Southern Pacific Company, a corporation.   There was a judgment of nonsuit after grant of new trial to defendant, and plaintiffs bring error.   Affirmed.

See, also (D. C.) 225 Fed. 297.

The plaintiffs in error, Mary Murray and Lena Murray, commenced an action in the superior court of the county of San Luis Obispo, in the state of California, on August 11, 1913, to recover damages against the defendant in error in the sum of $50,000, on account of the death of Henry Murray on May 30, 1913, which it is charged was caused by the negligence of the defendant. The case was removed to the United States District Court for the Southern District of California, Southern Division, and tried before the court sitting with a jury.  On November 28, 1914, the jury returned a verdict in favor of the plaintiffs in the sum of $5,000.  A judgment was rendered upon this verdict on November 30, 1914.  The defendant thereupon moved for a new trial upon the ground, among others, that the evidence was insufficient to justify the verdict of the jury in finding that the deceased was free from contributory negligence which was the proximate cause of the injury.  The court granted the motion for a new trial.  (D. C.) 225 Fed. 297.  It was subsequently stipu-

lated between the parties that the cause should be submitted to the court, sitting without a jury, upon all the evidence taken at the previous trial, for the purpose of permitting the defendant to move for a nonsuit. The evidence being submitted to the court in pursuance of the stipulation, the motion for a nonsuit was granted, and a judgment in favor of the defendant and against the plaintiffs entered on September 11, 1915. From this judgment plaintiffs bring this case here upon writ of error.

There is practically but one question submitted to this court for determination, and that is whether or not the conduct of the deceased immediately preceding the accident was such as to constitute, on his part, contributory negligence as a matter of law. The material facts are not in controversy. On the evening of May 30, 1913, Henry Murray, the deceased, and one William Thomas Moran left San Francisco for Santa Margarita, in San Luis Obispo county, Cal., on one of the regular passenger trains of the defendant corporation. Moran testified that during the trip Murray rode in the smoking car and found the brakeman, Edward Mulville, to be an acquaintance, and talked with him some time. In the course of the conversation the brakeman, upon learning that Murray intended to stop at the Hotel Santa Margarita, explained to him that: "The Santa Margarita Hotel is on the opposite side of the station. That station is on the left side, and the Santa Margarita Hotel is on the right-hand side, and when we get there I will show you where to get off." Moran testified that: "As we came into Santa Margarita, of course, we knew it was the station Santa Margarita. The whistle blew, and very soon afterwards Mulville came in from the rear of the smoker and came down and called and beckoned to us, and says: 'This is where you fellows get off.' We went back to the rear end of the smoker, and Murray was first, and I followed him, and the brakeman was ahead of Murray. He opened up the gate, the trap, and the door, on the forward end of the coach immediately behind the smoker, or at the rear end of the smoking car, * * * and he pointed out and said, 'There is your hotel up there,' and he left at once and went to the front end of the smoking car."

The brakeman, Mulville, corroborated Moran as to what occurred at this point of time, and testified that after opening the vestibule doors he went into the smoker to announce the station. He testified, further, that when the train was approaching the station he said to Murray: "Here, I will tell you what I will do. At this station, on account of picking up a helper, I will open the trap, and then when the train stops you can cross over, and when it does stop, it will be almost directly opposite the hotel."

The testimony of the witness Moran is all the evidence there is in the case concerning what followed, relating to the conduct of the deceased immediately preceding the accident. He testified: "Murray started down the steps, and the train was slowing down, and in fact it was just gliding along, and I was going down after him, but I knew that he was very close to the bottom— must have been on the last step—and I happened to glance up and saw the light from the car windows out on the ground, and I saw we were going quite fast, a great deal faster than I ever thought we were going, and Murray at the same time made an effort to step or get off or something, and I called to him, and it was too late; he was overbalanced, and he went off. He had a grip in his left hand, and had hold of the handhold on the right-hand side. He went to go off, and as I called to him of course his grip came down, and he would let it rest on the step and then pick it up, and he raised his foot to go off, and he started straight back, and the grip swung out and his left hand swung around, and he just went as quick as that (snapping fingers); he was gone. His back was toward the engine when he fell. * * * It was dark; you couldn't see a thing there. It was very dark, excepting where the lights of the train—where I was the light shone there from the smoker I came out of, and also the lights from the coach behind was showing through, and there was a porter or somebody standing just inside the door of that coach, and that door was open. It was too dark to see the ground immediately below the step. The only reason why I knew that Murray was making a mistake was because I got a glimpse of the ground from the lights of the car windows down below, the way it would shine out below. * * * There was no light

immediately in front of the steps when he stepped off—absolutely. * * * After I saw Murray disappear, I went down the steps and got off and ran back along until I found him. I called to him several times, but I found him lying alongside of the track. He was unconscious. I went across the lots and brought a doctor, and when I got back the doctor was there and some one else, and we took Murray—the doctor was there and he examined him and he had an awful hole in the back of his head. We put him on the stretcher and put him in the observation car and brought him to San Luis Obispo. There was an ambulance waiting for us there, and we took him to a sanitarium there. He lived about three hours. * * * It was a solid vestibule train, as far as I know. It was vestibuled between the smoking car and the first coach back. There was no platform provided for passengers alighting where Murray attempted to alight, the ground was just the same as you will get along any railroad track where they haven't made provisions for passengers to get off—just like anywhere along the last 50 miles back."

On cross-examination this witness testified: "We left San Francisco at 8 o'clock in the evening. The accident happened 20 minutes after 11. * * * Murray then descended the steps with his grip in his left hand. He had hold of the handhold with his right hand. He did not turn his back to the engine while he was on the car. When he went out hanging onto this thing it swung him with his back to the engine. The train was going perhaps 12 miles an hour, perhaps more; I could not tell. I happened to look out. I was standing back from the steps, and I had to glance up, that was, to where the light was cast out of the car windows, and there I saw the ground. I saw Murray step off; he stepped like he thought there was another step or the ground. I think the train was going 12 miles an hour, fully that. He heard my warning and tried to recover himself. I was standing behind him. As soon as I saw the rapidity with which the train was moving, I saw it was dangerous, and I knew it wouldn't do for him to attempt to alight and I called to him. He tried his best to recover himself, but he could not get back. The train ran about seven coaches from where he got off."

This witness was asked on redirect examination: "Q. And you went out there and started to get off because of the language and actions of the brakeman? A. Yes." There was a motion on the part of the defendant to strike out this question as leading and suggestive and the answer a conclusion of the witness. After discussion, the question was propounded by the court in this form: "Q. * * * what was your reason for getting off at that particular place?"—to which the witness answered: "A. Because we were directed to do so by the brakeman."

The deceased was 43 years of age; weighed about 230 pounds; was 5 feet and 11 inches in height, and in good health.

Theodore A. Bell, of San Francisco, Cal., and Milton K. Young, of Los Angeles, Cal., for plaintiffs in error.

Henry T. Gage and W. I. Gilbert, both of Los Angeles, Cal., for defendant in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] The rule respecting contributory negligence is clearly stated in 7 Am. & Eng. Ency. of Law (2d Ed.) 371, as follows:

"Contributory negligence is a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred."

It follows that the defense that the injured person is chargeable with contributory negligence concedes that there was actionable negligence on the part of the defendant. 29 Cyc. 506.

[2] Whether in this case the invitation of the brakeman to the deceased to alight from the train on the side opposite to the station *after the train had stopped,* coupled with the act of the brakeman in opening the gate, trap, and door on that side of the train and then, *while the train was still in motion,* leaving the platform to announce the station in the smoking car, constituted negligence on the part of the brakeman, and whether that negligence was attributable to the defendant, are not questions to be now determined. It is assumed, without so deciding, that the act of the brakeman was such negligence. The question here is, Did the deceased fail to use ordinary care in his movements in going down on the steps of the car while the train was in motion, and thus become chargeable with contributory negligence? The train was a vestibule train. On the outside it was dark. The deceased was unfamiliar with the locality. He was a strong, healthy man, in the possession of all his faculties, and knew that he was about to alight on the side of the train where there was no station and no platform, and that it was dangerous to go down on the steps of a vestibule train while the train was in motion. Moreover, the permission of the brakeman was not that he should go down on the steps of the car while the train was in motion, but that he should alight from the train on that side *after the train had stopped.* In going down on the steps of the car while the train was in motion, the deceased, not only assumed the risk of the situation, but he failed to use the care of an ordinarily prudent person. And then followed what we think was the fatal mistake of the deceased, growing out of a manifest lack of ordinary care in his movements. He carried a grip in his left hand. With his right hand he took hold of the handhold on the right-hand side of the steps, which on that side of the train was a hold in the opposite direction to the forward movement of the train. This was an exceedingly insecure and dangerous hold while the train was in motion, and unquestionably resulted in his fall from the train. When he fell, his back was toward the engine, showing that he had fallen backward. Had the unfortunate man carried his grip in his right hand and had taken hold of the handhold of the car with his left hand, facing forward (which, in the exercise of ordinary care, he should have done), he could have held himself securely on the steps with the motion of the train until it stopped, and the accident would have been avoided. These facts are not in dispute, nor are the inferences of fact to be drawn therefrom in substantial controversy. They are facts from which all reasonable men must draw the same conclusion. Grand Trunk Railway v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 36 L. Ed. 485.

In the case of Secor v. Toledo, Peoria & Warsaw R. Co., in the United States Circuit Court of Illinois, 10 Fed. 15, the question was whether a passenger who was injured in attempting to alight from a train while it was in motion was guilty of contributory negligence as a matter of law. The question arose in proceedings under a railroad receivership. The injured passenger presented a petition to the court, asking for compensation for the injury, to be paid by the receiver under the order of the court. Whether it was a claim to be

paid by the receiver was purely a question of law. The court states the facts as follows:

"While the train was still in motion the petitioner went out upon the rear end of the forward car of the train and was standing on the lower step, the train having apparently almost ceased to move; and, while he was in the act of stepping from the car to the platform of the station, the car was moved forward with a jerk, in consequence of which the petitioner was suddenly thrown with violence upon the platform of the station and injured."

These facts, particularly the jerk of the train throwing the petitioner upon the platform, presented a much stronger case in favor of the petitioner than is presented in favor of the plaintiffs in this case. Judge Drummond, in passing upon this petition, said:

"We think it must be stated, as a sound proposition in law, that wherever passengers undertake to leave a train under such circumstances as these, before it has actually stopped, they take the risk upon themselves. If they choose to act in accordance with the promptings caused by their own impatience, and to leave the train before it can be done with safety, the risk is theirs. In this case, in addition to the statement that has been made of the actual condition of the petitioner at the time, there is reason to believe that his attention was withdrawn from what he was about to do by conversation with another person, who was then or had just been talking to him."

The general rule is that an adult passenger who knowingly and unnecessarily attempts to alight from a railroad train while it is in motion is chargeable with contributory negligence as a matter of law. Hoylman v. Kanawha & Michigan Railroad Co., 65 W. Va. 264, 64 S. E. 536, 22 L. R. A. (N. S.) 741, 17 Ann. Cas. 1149, and cases cited in note.

We think the facts in the present case show conclusively as a matter of law that the deceased was chargeable with contributory negligence, and that the trial court was right in granting a nonsuit.

Judgment of the lower court affirmed.