[File No. 6099.]

ORTON LARSON, Respondent, v. FARMERS ELEVATOR COMPANY OF DWIGHT, NORTH DAKOTA, a Corporation, Appellant.

(249 N. W. 116.)

Opinion filed April 29, 1933.

*Lemke & Weaver,* for appellant.

*Heder & Lauder,* for respondent.

CHRISTIANSON, J. Plaintiff brought this action to recover damages for personal injuries claimed to have been sustained while he was unloading a truck load of grain at the defendant's elevator at Dwight, North Dakota. The case was tried to a jury and resulted in a verdict in favor of the plaintiff. The defendant moved in the alternative for judgment notwithstanding the verdict or for a new trial. The motion was denied and defendant has appealed from the judgment and from the order denying its motion for judgment notwithstanding the verdict or for a new trial. The sole question presented on this appeal is the sufficiency of the evidence to sustain the verdict.

The contentions of the appellant are stated in its brief on this appeal thus:

"(1) That plaintiff's negligence contributed to the accident and was the proximate cause thereof. (2) That plaintiff, by exercise of ordinary care, by the use of his eyes and knowledge that he had of the surroundings and environment, could have avoided the consequences of defendant's negligence, if any. (3) That plaintiff was a licensee and volunteer when he, unrequested and unsolicited, stepped into the tank to sweep the grain out."

The evidence discloses that defendant's elevator was equipped with a mechanical device whereby a truck or wagon containing grain was lowered at the rear and elevated at the front so that the grain in the box would run out. At the place where the grain was so unloaded there was provided an opening in the driveway some forty-two inches wide and six feet long through which the grain would pass into the pit or elevator. This opening was protected by an iron grating so that it would be possible to walk over it, and at the same time there were openings of sufficient size between the bars so that the grain could pass through. Back of this grating there was an additional opening some eighteen inches wide and forty-six inches in length. This opening was protected by a trapdoor but there was no iron grate, and when the trapdoor was open the entire aperture was open. Defendant adduced testimony to the effect that this trapdoor was not used when wagons were unloaded but that it was used in unloading trucks because the

trucks had boxes of such length that some of the grain would not pass through the opening covered by the iron grating but be deposited back of such grating. The box on the truck which the plaintiff drove had what is denominated an end gate, some two feet in width.

Plaintiff's version of the accident is as follows:

"I stopped on the scales and got out of the truck, and Mr. Gust (the manager of the elevator) weighed the load. I watched him, and I walked to the rear of the truck while he elevated the load and I elevated the end gate. Q. About how far did you open the end gate? A. About a foot. And then I stepped back and watched the grain run out. Q. Where were you standing when the grain was running out? A. Right back of the end gate. Q. Were you standing on this trap door? A. Yes, sir. Q. Go ahead; describe what happened. A. Well, I always carried a shovel in the truck, and as that came down with the grain I stepped forward and caught the shovel, and then I shoveled a little out of the corners while I was standing behind the truck, and I stepped in the truck and shoveled out what was to be shoveled, and I asked Mr. Gust for a broom, which he gave me. And I swept out the truck and I threw the broom out and took hold of the rear of the truck and stepped out backwards. My foot rested on something, so as I shifted my weight, started to lift my left foot, my right leg slipped and banged my shin up against the iron that was across the hole, the grating, and the first thing I knew I was hanging on by my left foot, hanging on the end gate part of the truck that was stationary. And in order to get out of the hole I had to pull my left leg over the truck box and raise myself up. And Mr. Gust then come around and said, 'Are you hurt?' "

The accident occurred about three o'clock in the afternoon. Plaintiff's truck was a 1927 Model T Ford Truck with a home made box. The box, according to plaintiff's testimony, was about eight feet long, six feet wide and twenty-eight inches high. The plaintiff testified that at the time of the accident he was delivering barley; that it was not customary to open the trapdoor when he delivered either barley or oats; that it was only sometimes when he hauled wheat which would run out fast that the trapdoor would be open. He further testified that they had not opened the trapdoor for any of the loads of barley that

he had hauled previously that day. He also testified that his truck was the smallest truck made.

The defendant's assistant manager testified as follows:

"Q. When Orton Larson was driving, was hauling barley or oats in that elevator, was it necessary to open the trapdoor in order to receive his load? A. Not from his truck. Q. Would you say it would be unusual if they would open the trapdoor when he was delivering barley? A. Yes, unless we from a matter of being used to long trucks would open it, but not necessarily, and if we did and knew it was his truck and he had barley or oats in there we didn't have to do it."

The manager of the defendant elevator company testified that the trapdoor was always open when grain was unloaded from trucks. He also contradicted the testimony of the plaintiff as to the manner in which the accident happened. The manager testified:

"He (plaintiff) was climbing over the back end of the end gate, as I saw it, and as he was climbing out he had a chain stretched across to hold his end gate together, and his one foot got caught in that chain and he lost his balance, thereby kind of falling over backwards, and his right foot went down into this hold, scratching his leg on the last bar of the grates."

The evidence discloses that the plaintiff had hauled grain to the elevator on many previous occasions and was aware of the opening protected by the trapdoor. He testified that when he drove into the elevator with the load in question here the trapdoor was closed; and, as already indicated, he further testified that he stood on the trapdoor and watched the grain run out of the box on the truck. He further testified that he did not see the trapdoor opened, and did not know when or by whom it was opened.

There is some conflict in the testimony as regards the custom that prevailed in unloading grain. The manager testified that it was the duty of the manager or assistant manager to unload, and to shovel and sweep out whatever grain did not run out. The assistant manager testified that as a matter of practice and custom the persons who hauled grain to the elevator in from seventy-five to ninety per cent of the cases assisted in unloading. According to this testimony the plaintiff was not a trespasser but at the time of the injury he was in a place where he had a right to be and was performing an act which he either

was invited to perform or in the performance of which the authorized agents of the defendant fully acquiesced. According to plaintiff's own testimony he was merely doing what he had done in every instance when he hauled grain upon previous occasions; and according to the testimony of the assistant manager of the defendant elevator, he was doing precisely what the great majority of the persons who delivered grain at the elevator did.

Was the plaintiff guilty of contributory negligence as a matter of law? After careful consideration we have reached the conclusion that this question must be answered in the negative. It is true plaintiff knew of the opening protected by the trapdoor. There is no claim that there was any difficulty in seeing whether the door was open or closed. The plaintiff knew that on certain occasions the door would be opened when grain was unloaded. Yet, according to plaintiff's testimony (and in view of the verdict we must assume that that is true) the plaintiff had unloaded many loads of grain from the same truck at the elevator in question. He had previously, on that same day, unloaded barley from the same truck in the same manner that he unloaded it at the time he sustained the injuries. On the previous occasions the trapdoor had remained shut, and that, he says, was the custom always when he unloaded barley or oats. The trapdoor was closed when he drove into the elevator with the load involved in this controversy. After he had removed the end gate he stepped back and stood on the trapdoor and watched the grain running out of the grain box. The trapdoor, therefore, must have been opened after he stepped into the grain box to shovel and sweep out whatever grain remained after the main part of the load had been unloaded. In these circumstances it cannot be said as a matter of law that the plaintiff was guilty of contributory negligence in stepping out of the grain box without looking to see whether the trapdoor had been opened. Negligence and contributory negligence are primarily questions for the jury. They become questions of law only when the facts are such that reasonable men, in the exercise of reason and judgment, can draw only one conclusion therefrom. We are agreed that in this case it cannot be said that the only conclusion that reasonably could be drawn is that the plaintiff was guilty of negligence, but that, on the contrary, the situation presented here is one where intelligent men, in the exercise of reason and judgment, may

come to different conclusions, and that, consequently, it was proper to submit to the jury the questions of negligence and contributory negligence and that the decision of the jurors fairly made upon these questions is binding upon this court. The judgment and order appealed from are affirmed.

NUESSLE, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.