Elvira MOE, Plaintiff-Respondent,

v.

P. J. KETTWIG, Defendant-Appellant.

Ronald MOE, by Mother and Guardian ad litem, Elvira Moe, Plaintiff-Respondent,

v.

P. J. KETTWIG, Defendant-Appellant.

Nos. 7452, 7453.

Supreme Court of North Dakota.

March 3, 1955.

Quentin N. Burdick, Fargo, for defendant-appellant.

Lanier, Lanier & Knox, Fargo, for plaintiff-respondent.

JOHNSON, Judge.

These two cases arise out of a collision between the defendant's automobile and a bicycle being used by Ronald Moe, a minor. The collision took place on September 2, 1952, between the hours of two and three-thirty p.m., on a graveled road just west of the city of Fargo.

Elvira Moe, the mother of Ronald Moe, brought an action against the defendant for damages incurred by her for hospital, doctor and other expenses resulting from the injuries sustained by her son, Ronald Moe, in the accident.

Ronald Moe, by his mother as his guardian ad litem, brought an action for damages for injuries which he sustained in the accident. He and two other boys were riding bicycles in a westerly direction on a public highway, known as Twelfth Avenue North, extending just beyond the corporate limits of the city of Fargo. The defendant was driving in the same direction and overtook the boys, and in attempting to pass them, collided with the bicycle ridden by Ronald Moe, resulting in injuries to him.

The defendant was a resident of Ramsey County, North Dakota, and the two cases

were consolidated for trial and tried to a jury in Ramsey County, North Dakota. Separate verdicts were rendered in each case, in favor of the plaintiffs. Judgments were entered on the verdicts. Thereafter the defendant in both cases moved for a judgment notwithstanding the verdict or in the alternative for a new trial. The motions were denied by the trial court. The defendant appeals from the order denying the motion for judgment notwithstanding the verdict or in the alternative for a new trial and from the judgment entered in each case. These cases were argued together in this court. Both actions involve the same facts.

Elvira Moe, in her complaint, alleges that the defendant was negligent; that his negligence resulted in injuries to her minor son, Ronald Moe, and that as a result of said injuries, she incurred hospital, medical and other expenses amounting to several hundred dollars, and prayed for judgment to cover the same.

The defendant answered, admitting that the accident occurred on the 2nd day of September, 1952, in Cass County, North Dakota, between his automobile and a bicycle ridden by Ronald Moe. He alleges that the collision and the resulting damages were "proximately caused and contributed to by the negligence of Ronald Moe in the operation of his bicycle" and asked for a dismissal of the action.

In the action of Ronald Moe, by his mother as his guardian ad litem, the plaintiff alleges that the defendant was negligent; that by reason of his negligence, and as the proximate cause thereof, the defendant struck Ronald Moe, causing him serious and permanent injuries; that the plaintiff suffered a transverse fracture of the middle right femur causing two inches of overriding; that on the 3rd day of September, 1952, the day after the accident, the fracture was set and a plaster cast applied; that on the 15th day of September, 1952, due to the bad breakage, the fracture had slipped and it was necessary to perform surgery on the leg of the plaintiff and to reduce the fracture and insert a four-screw plate in the leg, and a new plaster cast was applied; that the plaintiff remained in the cast until the 20th day of October, but thereafter he was on crutches for some time; that by reason of the fracture and the operation, the plaintiff suffered and continued to suffer great pain and misery, and prayed for damages for the injuries and the pain and suffering connected therewith.

The defendant answered admitting that the accident took place on the 2nd day of September, 1952, in Cass County, between an automobile owned by him and a bicycle ridden by Ronald Moe; that the collision and the resulting damage were "proximately caused and contributed to by the negligence of Ronald Moe in the operation of his bicycle", and asked for a dismissal of the action.

The jury rendered a verdict in favor of the plaintiff, Elvira Moe, for the amount of the doctor, hospital and other bills resulting from the injuries to her son, Ronald Moe.

In the action of Ronald Moe, by his mother as his guardian ad litem, the jury rendered a verdict in his favor for ten thousand dollars.

In connection with the motion for judgment notwithstanding the verdict or a new trial, before the trial court, in each case, the defendant set forth specifications and assignments of errors relating to:

1. Insufficiency of the evidence to justify the verdict of the jury.

2. Errors of law occurring at the trial.

3. Excessiveness of the verdict.

The assignments and specifications of error were identical on the motions in both cases, except that the excessiveness of the verdict does not apply in the case of Elvira Moe. On the appeal in these cases, the denial of the defendant's motions for judgment notwithstanding the verdict, or in the alternative, for a new trial, and that the verdicts are against the law, are assigned as additional errors. The assignment of error that

the verdicts are against the law is a mere conclusion which adds nothing to the others set forth.

We will first dispose of the assignment of error as to the insufficiency of the evidence to justify the verdicts of the jury. In this connection the defendant and appellant asserts that there is no competent evidence in the record of excessive speed, or that the defendant failed to keep a lookout, and that the only evidence of speed shows that the defendant was driving forty to forty-five miles per hour; that sixty miles is prima facie lawful; that the defendant failed to keep his car under control, and that there is no evidence to show that he did not exercise reasonable care under the circumstances. This assignment of error makes it necessary to set forth the facts somewhat in detail.

On the afternoon of the date set forth, somewhere between the hours of two and three-thirty p. m., three boys, Robert Rugroden, Howard Gensler and Ronald Moe, were riding two bicycles on a straight, level road, which runs west from the city of Fargo. They were proceeding in a westerly direction. Rugroden was propelling himself and his friend, Howard Gensler, who was on the cross bars of Gensler's bicycle. Ronald Moe was riding his brother's bicycle alone. The accident took place about seven tenths of a mile west of the city limits of the city of Fargo. The driving surface of the road was of gravel, and was from twenty-four to twenty-six feet wide. At about the time the boys were riding their bicycles on this road, the defendant was driving his automobile thereon, also in a westerly direction.

Just prior to the time the defendant saw the boys he had passed two trucks, driving in a westerly direction. He noticed the two bicycles with the three boys ahead of him. He claims that he touched and sounded his horn "about three blocks from the boys." He says one of the boys was riding in the middle of the road, and that as he touched his horn all three boys turned their heads and looked back.

Robert Rugroden states that when he first noticed the car of the defendant, it was about two blocks away. The boy in the middle of the road later turned out to be Ronald Moe. The defendant claims that the boy in the middle of the road looked around when he was more than a block away. Ronald Moe tried to pass the other two boys on the bicycle being propelled by Rugroden and on which Howard Gensler was riding. All three boys state positively that they did not hear the defendant sound his horn; that he did not sound his horn until "just before he hit him (Moe)". It was only a matter of a split second or so after the horn was sounded until the collision occurred.

The defendant testifies that after he had sounded his horn and noticed the boy in the middle attempting to pass the other boys, he thought everything was clear to go to the left side of the road. Just about the time that he was upon the boys, Ronald Moe angled to the left and the middle of the front bumper of the defendant's car hit him and his right leg was broken. When Ronald Moe attempted to pass Rugroden and Gensler, they were two or three feet from the right shoulder of the road. At the time of the collision the defendant estimated that he was going from forty to forty-five miles per hour. He admits that he was not watching his speedometer. There were skid marks on the road estimated at from four to six feet long leading back from the point of impact between the car and the bicycle of Ronald Moe. Ronald Moe says that he tried to pass the other boys, but does not remember anything more.

The defendant admits that he saw a boy in the middle of the road. He admits that he saw him some distance before he was upon him. The jury, in considering the evidence, apparently believed the plaintiff, Ronald Moe, and his witnesses, that the defendant did not sound his horn until he was almost upon Ronald Moe. The two boys with him indicate that just prior to the collision, Ronald Moe angled to the left, after having attempted to pass them. Before the accident he had been behind Rugroden and

Gensler. The evidence may well have been interpreted by the jury as indicating that Ronald Moe, in trying to pass the other two boys, being unable to make it, pulled further to the left in an endeavor to procure clearance to pass them and at that moment was hit by the defendant. The jury verdicts in these cases have determined that Ronald Moe was not guilty of contributory negligence.

Ronald Moe admits that he was pretty much in the middle of the road when he was hit. He denies that he heard the car behind him. There is no testimony that Ronald Moe either heard, or, if he heard, paid any attention to the fact that Robert Rugroden told him that there was a car coming from behind. If the jury believed that Ronald Moe had been warned by his companion, Rugroden, nevertheless it did not find him guilty of contributing to his injuries. Robert Rugroden admits that he saw the car behind them, and when asked: "Q. And did Ronnie do anything when you said there was a car coming? A. No, he started to pass." The evidence does not show that Ronald Moe was aware of the defendant's car until it hit him.

The defendant was watching the boys. He did not slacken his speed until the boy on the bicycle in the middle of the road (Ronald Moe) made a turn to the left, and at that time, by his own estimate, he was going between forty and forty-five. He claims that Ronald Moe, riding in the middle of the road, looked around when he was a block behind the boys. He thought everything was clear. He was then asked:

"Q. Then he (Ronald Moe) made a column left like we used to do in the Marine Corps and headed right to the other side? A. That is right.

"Q. No angles? A. No angles.

"Q. He just turned that bicycle and went right over to the other side?"

The jury's verdict would indicate that it did not believe this testimony of the defendant and the evidence is such that it would be warranted in not doing so.

The defendant also testified: "I didn't have time to do anything but head for the ditch, hit the horn and hit the brakes * * *." This testimony indicates that he was upon the plaintiff before he attempted to get his car under control to avoid a collision.

The appellant assigns error by reason of the fact that one of the boys testified that the appellant was going "fast" and the other that defendant was going between forty and fifty miles per hour. We find no error in the admission of this testimony. The defendant himself testified that he was driving approximately forty-five miles per hour, but does not fix his rate of speed accurately because he had not looked at his speedometer. He merely estimates his speed. The facts show that in a space of approximately five hundred yards he had passed two large trucks, which in itself would be quite convincing evidence that he was going at least forty-five miles per hour. Every member of the jury would have personal knowledge, based upon experience and observation, that large trucks leaving a city would not loiter along the road after getting beyond the city limits under ordinary circumstances. From this testimony the jury could readily infer that the defendant was traveling at no less a speed than was estimated by the boys. The evidence of the boys as to speed is, therefore, not the only evidence as to that in this record. If there was any error in the admission of this testimony, it was error without prejudice because the defendant himself virtually corroborates the testimony of the two boys who testified as to his speed.

There is no evidence in the record except that of the defendant, that Ronald Moe, the boy in the middle, looked around.

There is a square conflict in the evidence as to whether or not the defendant sounded his horn to give the boys warning. The evidence indicates that he assumed, because the boy in the middle was attempting to pass the other two boys, that everything was clear. Apparently on that assumption he did not slacken his speed so as to obtain better control of his car.

■ The jury believed the version of the evidence presented by the plaintiff, Ronald Moe, and his witnesses. It did not believe the defendant. With the state of the evidence in conflict as to negligence and contributory negligence, it was for the jury to determine the question of negligence and contributory negligence. Larson v. Farmers' Elevator Co., 63 N.D. 396, 249 N.W. 116. The jury must have believed that the defendant did not give proper warning.

■■ There is no testimony in the record to show the speed limit on the highway at the point of the accident. The pleadings assert that the speed limit was only twenty-five miles per hour at the place of the accident. There is no testimony or proof of that fact. In absence of such proof, we assume that the speed limit on the highway at the point of the accident was governed by our statute which makes certain speed limits prima facie lawful. Section 39–0902 of the NDRC 1943, as amended by subsection 8 of the 1953 Supplement. These speed limits, however, are not absolute, as the statute provides that:

"In any case when the speed limitations provided for in the foregoing subsection shall be unsafe, it shall be unlawful to operate a motor vehicle at such speed."

Furthermore, under Section 39–0901 of the NDRC 1943, it is incumbent upon a driver of a motor vehicle to drive "at a careful and prudent speed not greater than is reasonable and proper, having due regard to the *traffic*, surface, and width of the highway and any other conditions then existing." (Emphasis supplied.)

■■ It must be remembered in these cases the verdicts of the jury have resolved the conflict in the evidence. These verdicts having been rendered, the conflict in the evidence must be resolved by this court in favor of, rather than against, the verdicts. Rober v. Northern P. Ry. Co., 25 N.D. 394, 419, 142 N.W. 22, 28. Where the evidence is conflicting, and there is evidence legally sufficient to sustain the verdict, it is con-clusive on appeal. Griffin v. Implement Dealers' Mutual Fire Insurance Co., 64 N.D. 146, 250 N.W. 780.

■■ Negligence and contributory negligence are questions of fact for the jury, and it is only when the evidence is without material conflict, and is such that all reasonable men must draw the same conclusion therefrom that the question is one for the court. Here the question of negligence of the defendant and contributory negligence of the plaintiff, Ronald Moe, in view of the state of the evidence, was clearly for the jury. Rober v. Northern P. Ry. Co., supra. Where the evidence is in conflict and reasonable men might draw different conclusions therefrom, this court, on appeal, will disturb neither the verdict of the jury based on such evidence nor the order of the trial court denying motions for judgment notwithstanding verdict or for new trial on ground of insufficiency of the evidence. Reuter v. Olson, N.D., 59 N.W.2d 830; Clark v. Josephson, N.D., 66 N.W.2d 539.

■ This disposes of the assignments of error based on the insufficiency of the evidence. There was evidence in the record from which the jury could determine that the defendant and appellant, under all the circumstances, was not keeping a proper lookout; that he did not give warning, or that it was not a sufficient warning, and that he, perhaps, was driving too fast under the circumstances, although he may have only been driving forty-five miles per hour according to his own testimony. All questions of fact have been resolved favorably to the plaintiffs.

The verdicts of these cases, therefore, based on the conflicting evidence in the record, will not be disturbed in absence of legal error. The only assignments of errors of law that may have some merit are those in which it is claimed the court erred and misdirected the jury in its instructions in these cases.

■ The answer in both cases pleads the defense of contributory negligence of the

plaintiff, Ronald Moe. It is an affirmative defense. Bagg v. Otter Tail Power Co., 70 N.D. 704, 297 N.W. 774. The burden to prove it is on the defendant. Sanders v. Reister, 1 Dak. 151 (145), 46 N.W. 680; Rober v. Northern P. Ry. Co., 25 N.D. 394, 142 N.W. 22; Mares v. Northern Pacific R. Co., 3 Dak. 336, 21 N.W. 5, affirmed; Northern Pac. R. Co. v. Mares, 123 U.S. 710, 8 S.Ct. 321, 31 L.Ed. 296.

The appellant complains that the court erred and misdirected the jury in the following instruction: "To determine whether or not the plaintiff Ronald Moe was guilty of contributory negligence in this case, his conduct must be measured by what a person of his age and capacity under the same circumstances and surroundings would have done, and if his conduct at the time of the injury was contributory negligence, when measured by the rules that I have heretofore stated to you, *and if such contributory negligence on the part of the plaintiff, Ronald Moe, was the proximate cause of the injury, then you should find for the defendant for the dismissal of both actions."* (Emphasis supplied.) The first part of this instruction dealing with the conduct and measure of care required by a minor was approved in the case of Enget v. Neff, 77 N.D. 356, 360, 43 N.W.2d 644, 646. The specific misdirection contended for is the wording, "if such contributory negligence on the part of the plaintiff, Ronald Moe, was the proximate cause of the injury." Just prior to this instruction, the trial court defined contributory negligence as follows: "Contributory negligence in legal signification is such an act or omission on the part of the plaintiff, Ronald Moe, amounting to a want of ordinary care, as, concurring or cooperating with the negligent act of the defendant, if you find the defendant was negligent, is the proximate cause of the occasion of the injury complained of."

 The measure of care imposed upon the minor, Ronald Moe, was properly to be measured by what a person of his age, capacity, intelligence and experience, under the same circumstances and surroundings would have done. The plaintiff, Ronald Moe, was thirteen years of age at the time of the accident. He had not made good progress in school. Twice he had failed to pass his grade. He admitted that school was difficult for him. The jury in considering the evidence had a right to apply the standard of care to his conduct on the basis of the rule in the case of Enget v. Neff, supra, and we must assume that they did do so.

 Where the plaintiff's own negligence contributes proximately to the injury, he is not entitled to recover. Sherlock v. Minneapolis, St. Paul, & Sault Ste. Marie Railway Company, 24 N.D. 40, 138 N.W. 976; Engen v. Skeels, 60 N.D. 652, 236 N.W. 240; Stelter v. Northern P. R. Co., 71 N.D. 214, 299 N.W. 310.

The trial court in outlining the issues before the jury charged with reference to negligence and contributory negligence, as follows:

"You will first determine whether the plaintiff, Ronald Moe, has proven by the degree of proof required that the collision between defendant's automobile and his bicycle and the injuries resulting to him and the damages he claims to have sustained as the result thereof were proximately caused by the negligence of the defendant. You will next determine whether the plaintiff, Ronald Moe, himself was negligent and if you find that he was, whether his negligence was the proximate cause of the injuries he sustained."

 The principal objections set forth by the appellant as errors in the instructions center around the statement: "whether the plaintiff, Ronald Moe, himself was negligent and if you find that he was, whether his negligence was the proximate cause of the injuries he sustained." The trial court used this or similar language in five different parts of the instructions to the jury dealing with contributory negligence on the part of said plaintiff. These instructions were erroneous. Anderson v. Jacobson, 42 N.D. 87, 92, 172 N.W. 64, 66; Clark

v. Feldman, 57 N.D. 741, 224 N.W. 167; Engen v. Skeels, 60 N.D. 652, 236 N.W. 240.

It now becomes necessary to determine whether the erroneous instructions were prejudicial in view of other and further instructions given by the court that were correct.

■ With reference to the claims of the defendant, it charged: "The defendant claims that the plaintiff Ronald Moe was guilty of contributory negligence and that such negligence on the part of said plaintiff was the proximate cause of his injuries." Immediately following the above statement, the court further charged the jury as follows: "Contributory negligence in legal signification is such an act or omission on the part of the plaintiff, Ronald Moe, amounting to a want of ordinary care, as, concurring or cooperating with the negligent act of the defendant, if you find the defendant was negligent, is the proximate cause or occasion of the injury complained of." While this instruction is not in the exact words of some of the North Dakota cases, it appears to be a sufficient definition of contributory negligence In the case of DeHoney v. Harding, 300 F. 696, 699, the Circuit Court of Appeals of the Eighth Circuit, in a case that arose in the city of Fargo, used very similar language as that quoted from the charge in the case at bar. It said contributory negligence has been defined as follows:

" 'Contributory negligence is a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury as a proximate cause thereof, without which the injury would not have occurred.' Murray v. Southern Pacific Co., 9 Cir., 236 F. 704, at page 706, 150 C.C.A. 36, 38."

In the early part of the charge the court had instructed the jury as follows: "If you should find that the evidence is so evenly balanced on both sides that you are unable to determine on which side it preponderates,

then your verdict should be for the defendant for the dismissal of the actions."

Again thereafter, the court in its instructions to the jury outlined two forms of verdict for each case and applied them to the two actions, using the following language: "This is the form of verdict you will return if you find that the defendant was negligent and that his negligence was the proximate cause of the injury, unless you further find that the plaintiff, Ronald Moe, was guilty of contributory negligence which proximately caused or contributed to his injuries."

In the other form of verdict the court charged the jury as follows: " 'We, the jury in the above entitled action, find for the defendant and for the dismissal of the action wherein Ronald Moe is plaintiff by his guardian ad litem.' This is the form of verdict you will return if the plaintiff has failed to prove by a fair preponderance of the evidence that the defendant was negligent and that his negligence was the proximate cause of the injury; or, that the plaintiff was guilty of contributory negligence which proximately caused or contributed to his injury." Similar instructions with reference to the action of Elvira Moe were given.

Thus the court, in dealing with the verdicts, four times instructed the jury that they could not find for the plaintiff, Ronald Moe, if he had proximately caused or contributed to his injury. These instructions were correct. Prior to outlining the verdicts the court correctly stated the rule with reference to contributory negligence as follows: "* * * it would be your duty to find for each of the plaintiffs, unless you further find that the plaintiff, Ronald Moe, is guilty of contributory negligence which proximately caused or contributed to his injuries." This and the four statements with reference to contributory negligence as contained in the court's instructions dealing with the verdicts, were the last impressions left with the jury with reference to the law on contributory negligence.

862

In the case of Anderson v. Jacobson, supra [42 N.D. 87, 172 N.W. 66], this court, in dealing with a similar instruction on contributory negligence, said:

"In a portion of the instructions complained of, the court directed that if the jury should find 'by reason of said acts the plaintiff sustained an injury, and that said act was the proximate cause of the injury, such would constitute contributory negligence, and the plaintiff could not recover.' The instruction was not correct, in that it stated in substance that contributory negligence, sufficient to deprive the plaintiff of the right to recover, must have been the proximate cause of the injury. Such is clearly not the law, but it is by no means apparent that the defendant was prejudiced by the erroneous statement. We do not think it could have misled the jury, since in the immediately following paragraph the jury was again told:

" 'If you so find that the plaintiff was guilty of contributory negligence, or, in other words, that the plaintiff committed some negligent act which the defendant sets up, and to which I have called your attention, then the plaintiff cannot recover, though you may find that the defendant himself was guilty of negligence.' "

The jury in the case at bar had been informed that contributory negligence of the plaintiff must either have proximately caused the injuries or contributed thereto, and that in such event the plaintiff was not entitled to recover. The court further instructed the jury as follows: "The plaintiff, Ronald Moe, and the defendant have each charged each other with being negligent, and I charge you that you are not permitted to compare the negligence, if any, of the plaintiff, Ronald Moe, with the negligence, if any, of the defendant, nor to apportion the same. If you find that either the plaintiff, Ronald Moe, or the defendant was negligent, and the other was not, your verdict will be in favor of whichever of these two parties you find was not negli-

gent, except, if you find that both were negligent, then your verdict will be for the defendant for the dismissal of both complaints."

The instructions of the court must be considered in their entirety. Error cannot be predicated on parts thereof where the charge as a whole is not subject to the objection made to a part thereof. Buchanan v. Minneapolis Threshing Mach. Co., 17 N.D. 343, 116 N.W. 335. When isolated sentences containing an erroneous statement of the law, but which, when taken with the rest of the charge, cannot have misled the jury, the error is harmless and does not warrant a reversal. McBride v. Wallace, 17 N.D. 495, 117 N.W. 857; Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11; Ferderer v. Northern Pac. Ry. Co., 77 N.D. 169, 42 N.W.2d 216.

An alleged erroneous statement contained in the court's instructions must be considered in connection with its context and the instructions as a whole. Haslam v. Babcock, 71 N.D. 363, 1 N.W.2d 335.

The instructions must be considered as a whole and if, as a whole, they state the law correctly, there is no reversible error, although a part of the instructions considered alone may be erroneous. Buchanan v. Minneapolis Threshing Mach. Co., supra; Carpenter v. Village of Dickey, 26 N.D. 176, 143 N.W. 964; Wyldes v. Patterson, 31 N.D. 282, 153 N.W. 630; Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11.

The appellant also claims that the court misdirected the jury by the following instruction: "You are instructed that since children have a right to ride bicycles upon the highways, motorists should use reasonable care to watch out for such riders, and motorists approaching such riders are under a duty of reasonable care not to injure them. *The exercise of ordinary care requires a motorist to give warning of his intention to pass children on bicycles and then to allow sufficient room to pass safely.*"

The italicized portion, the appellant contends, is an erroneous statement of

the law. He does not cite any authority for his contention. He merely states that the statement is erroneous. It was the duty of the appellant to give warning of his approach, or his intention to pass. Section 39–1006 of the NDRC 1943. The verdicts of the jury indicate that it thought the appellant had not done so. This instruction is isolated from its context. The court in this connection further stated: "Where a motorist sees boys on a bicycle in front of him, or somewhere near the path which his automobile will traverse, it is his duty to drive no faster than is reasonable under all the circumstances then prevailing and to keep a lookout for such boys."

■ The law requires a motorist to keep a proper lookout. The appellant admits that he saw the boys some distance ahead. The evidence indicates that he had ample time to get his car under such control as to enable him to safely pass the boys. He was required to drive "at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic * * *." Section 39–0901 NDRC 1943. The jury must have felt that he had failed in this respect. We find no error in this instruction when considered in connection with all the other instructions given by the court.

The rule here applicable is well stated in syllabus 14, Wyldes v. Patterson, 31 N.D. 282, 284, 153 N.W. 630, 631, as follows:

"The charge of a court to a jury is entitled to a reasonable interpretation. It is to be construed as a whole, in the same connected way in which it is given, and upon the presumption that the jury did not overlook any portion that gave due weight to it as a whole. If, when so construed, it presents the law fairly and correctly, and in a manner not calculated to mislead the jury, it will afford no ground for reversing the judgment, although some of its expressions if standing alone might be regarded as erroneous, because there may be an apparent conflict between isolated sentences, or because some one of them,

taken abstractly, may have been erroneous."

■ The burden resting on the appellant is not sustained by showing an error, but he must show that the error was prejudicial. Where an appellant seeks to have a verdict of a jury in a civil case set aside because of erroneous instructions, he must establish affirmatively by the record presented to the appellate court, that, under the evidence, the jury might, and probably would have returned a different verdict if the erroneous instructions had not been given. State v. Van Horne, 71 N.D. 455, 2 N.W.2d 1, 2. In this case the court said:

"It is a well-settled rule of general application that ' "An appellate court will indulge all reasonable presumptions in favor of the correctness of the judgment, order, or decree from which the appeal is taken. In other words it will be presumed on appeal, in the absence of a contrary showing, that the trial court acted correctly and did not err. Indeed error is never presumed on appeal, but must be affirmatively shown by the record; and the burden of so showing it is on the party alleging it, or as sometimes stated, the burden of showing error affirmatively is upon the appellant or plaintiff in error." 4 C.J. 731–733. See, also, Erickson v. Wiper, 33 N.D. 193, 222, 157 N.W. 592.' "

See Section 28–0742 of the NDRC 1943. This rule was again repeated in different language in the opinion written after filing of petition for rehearing.

The appellant in these cases has failed to sustain the burden imposed upon him. The record does not contain, except for the erroneous instructions mentioned, anything that would indicate that the jury might or probably would have returned a different verdict. The appellant has failed to point out wherein the claimed errors resulted in prejudice to him under all the evidence in this case. We do not believe that the erroneous instructions given misled or confused the jury in dealing with the facts in these

cases. The burden, resting upon the appellant, is not sustained by showing the error. The verdicts in these cases are based upon sufficient evidence. The erroneous instructions, when taken and considered in connection with other instructions set forth in the last part of the charge defining contributory negligence, which are correct, and when also taken into consideration with the definition of negligence given by the court, are, when the whole charge is read together, and given a reasonable interpretation, not misleading or confusing. If the objectionable portions of the instructions were all that had been said by the trial court regarding contributory negligence, there would be merit to the criticism leveled at the instructions thus given. But when the instructions are considered in their entirety, and we must assume that the jury in arriving at their verdicts in these cases did consider the instructions in their entirety and as a whole, we cannot say that they were prejudicial.

The jury was instructed that if it believed that the plaintiff, Ronald Moe, had contributed to his injuries, that it must find for the defendant. See Swan v. Dailey-Luce Auto Co., 221 Iowa 842, 265 N.W. 143, 145, where certain instructions concerning contributory negligence were under attack. After reciting the instructions as given, the court said: "We think that, when these instructions are construed together, they fairly and correctly instruct the jury upon the question of contributory negligence." The court also said: " 'It is well stated (the rule as to contributory negligence) in Banning v. Chicago, R. I. & P. R. Co., 89 Iowa 74, at page 81, 56 N.W. 277, 279, where we said: "If the injured party contributed in any way, or in any degree directly to the injury, there can be no recovery." * * * The thought involved in the use of the term "proximately caused" is that there must be a causal relation between the plaintiff's negligence and the injury, * * *.' " The court further indicated that the instructions were not considered as model definitions of contributory negligence, but felt constrained to hold that, when considered together and in connection with the instructions on negligence, they sufficiently advised the jury as

to the meaning of contributory negligence and were, therefore, not sufficiently prejudicial to constitute error.

We have carefully considered the entire instructions given by the trial court and, while isolated portions thereof were erroneous, the jury had before it instructions that correctly advised it as to the meaning of negligence and contributory negligence and when the entire instructions are studied in the light of the evidence, we cannot say that they were erroneous and constitute prejudicial error.

No errors of law occurred in the trial requiring that the verdicts be set aside or that a new trial be granted.

We will now deal with the alleged excessiveness of the verdict in the case of Ronald Moe by his guardian ad litem.

The jury heard all of the evidence in the case and had an opportunity to observe all the witnesses except those that testified by deposition. Dr. Joel Swanson testified by deposition as to the injuries of the plaintiff, Ronald Moe. He is a specialist in orthopedic surgery. He was Ronald Moe's doctor. No other doctor was called to testify concerning the injuries of the plaintiff, Ronald Moe.

The trial court was of the opinion that the jury was in a far better position than it was to correctly and accurately estimate and fix the damages of the plaintiff, Ronald Moe, and to determine what would reasonably compensate him for the injuries he sustained. It felt that the verdict of the plaintiff, Ronald Moe, was not tainted with passion and prejudice.

The doctor's testimony shows that the plaintiff, when he first examined him on the 2nd day of September 1952, was in moderate shock; that he had a transverse fracture of the middle third of his right femur with two inches of overriding of the bone, which the doctor explained. He said that at the fracture line the muscles had pulled the bones so that the ends were overlapping two inches. He was asked the treatment that was necessary in this connection and he

stated that the overriding was corrected by traction and a plaster cast applied. This was done on September 3, 1952. On September 15 an x-ray was taken to check the fracture and it was found that the fracture had slipped and because of the overriding that was again present, it was necessary to have an "open reduction and plating of the fractured femur." This involved surgery to the bone. The ends of the bone were brought together and fastened with a metal plate. It was explained that the metal plate is usually a permanent condition. It was further explained that doctors generally hesitate to put on an internal fixation plate and screws in the fractures of children, "because of the possibility that it might stimulate the bone." He explained that it had been found experimentally and also clinically that the introduction of foreign material into the growing bone tends to stimulate the bone to lengthen, so that under ordinary conditions it is sought to reduce a fracture without surgery. On the 22nd day of October, 1952, the boy went home. Five days later he reported to the doctor's office using crutches, and he was on crutches until on or about the first day of December, 1952. In the meantime he took physical therapy treatments to further facilitate the improvement of his injured right leg. On the date of the trial the doctor made a measurement of the legs of Ronald Moe and found that the right leg was about a quarter of an inch longer than the left leg, but indicated that that was not unusual. But he recommended that the leg length of the boy be measured every six months to determine whether it would approach the place where he might develop a disabling leg limp and require measures to retard the growth. The doctor explained the medical practice by which that could be accomplished.

From this it would appear that the injuries of Ronald Moe were of considerable duration; that they involved considerable pain and suffering, surgery, medical treatment by way of physical therapy after the surgery, and that the possibility of the insertion of the metal plate screwed into the bone might stimulate the growth thereof in a young boy which would require examination every six months to determine whether such stimulation of the bone growth was taking place, so that effective treatment could be administered if the plate was stimulating the growth of the bone.

When all of these things are considered, it cannot be said that the verdict was excessive or that the jury was influenced by passion or prejudice in arriving at its verdict in favor of Ronald Moe. In this connection it must be remembered that this collision and the injuries resulting to Ronald Moe occurred in Cass County, North Dakota; that the actions were tried in Devils Lake, Ramsey County, North Dakota, where the defendant had been a long time resident. The defendant, therefore, had the advantage of having these two cases tried and heard in his own community, while the plaintiffs were entire strangers therein. The verdict cannot be said as a matter of law to have been excessive. See Loveland v. Nieters, N.D., 54 N.W.2d 533.

We find no error in the record that would warrant a reversal of the judgments for the plaintiffs. The orders denying judgments notwithstanding the verdicts or in the alternative for a new trial and the judgments in both cases are affirmed.

BURKE, C. J., and GRIMSON, SATHRE and MORRIS, JJ., concur.